Thomas v. Desney.

## THOMAS v. DESNEY.

1. **Agent:** NEGOTIATOR OF LOANS: NOTICE TO. Where parties sign an application for a loan, agreeing to pay all expenses, the person employed to negotiate the loan is the agent of the borrower, and notice to him of defects in the title is not notice to the lender.

2. **Constructive Notice:** MISNOMER. Where two names, differing in sound, are commonly used as the same or are derived from the same source, as understood in the English language, the use of one for the other is no misnomer. *Held*, that "Helen" and "Ellen" are distinct names, and that a judgment entered and indexed against Ellen Desney is not constructive notice of a lien against the lands of Helen Desney.

3. ————: INDEX. Where a party is not charged with constructive notice by the index book of judgments, he is not bound by what appears of record.

*Appeal from Guthrie Circuit Court.*

MONDAY, OCTOBER 24.

ACTION to foreclose a mortgage executed by Helen and Daniel Desney. Messrs. Jackson and C. Aultman & Co. were made defendants, it being stated they claimed title to or a lien on the mortgaged premises, but that the same was junior to the mortgage. A decree by default was entered against all the defendants except Aultman & Co. Between the latter and the plaintiff it was stipulated the cause should be "referred to Hon. J. R. Barcroft, to take the evidence in writing, to find the facts and law, and to report to the court." This was done; the referee made his report, to which Aultman & Co. filed exceptions, which were overruled; the report confirmed and a decree entered for the plaintiff. Aultman & Co. appeal.

*Phillips, Goode & Phillips*, for appellant.

*D. G. Edmundson*, for appellee.

SEEVERS, J.—As the only parties to this appeal are the plaintiff and Aultman & Co., the latter will be designated defendant. The only contention between the parties is as to who has

the prior lien on the real estate mortgaged. The mortgage was executed and recorded in November, 1877, and thereunder the plaintiff claims. The defendant claims under a judgment by confession which was entered of record May 21, 1877. The judgment being prior in point of time the plaintiff claims it should be held to be junior to the mortgage on two grounds: First, the judgment was rendered against "Ellen Desney" and the plaintiff had "no knowledge, actual or constructive, of said judgment at the time of the execution of the mortgage." Second, the confession of judgment was delivered to one Moore as an escrow and the same was not to be filed or entered of record without the consent of the Desneys and when they had obtained a loan secured by mortgage on said land.

The referee found for the plaintiff on the last ground and declined to pass upon the first because unnecessary.

The plaintiff insists the finding of the referee is right, but claims whether this is so or not is immaterial, because the decree must be affirmed on the first ground. If the premises are correct it is in substance conceded to be so by the counsel for the appellant, but the latter insists:

I. That the mortgagee had express notice of the judgment. The real estate belonged to Helen Desney and it so appeared 1. AGENT: ne- of record. She and her husband, Daniel Desney, gotiator of loans: notice confessed the judgment, and they employed one to. Moore to negotiate a loan to be secured by mortgage on the real estate. Moore made application therefor to the New England Loan and Trust Company, who either made the loan for the plaintiff with the funds in its possession belonging to him, or the application was submitted to him by the company and the loan made by the plaintiff. It is not deemed material which way it was done, as it will be conceded the company was the agent of the plaintiff who is a non-resident of the State.

We do not understand it to be claimed that either the plaintiff or the company had express notice of the judgment. If

mistaken in this, we are sure there is no evidence so tending. Moore did have such notice and it is insisted he was the agent of both the plaintiff and said company. Moore was employed by the Desneys and paid by them. He testifies: "Don't know but he was acting as agent for the company or for all parties." This is in the nature of a legal opinion and the plaintiff is not bound thereby. The fact is an application for the loan was signed by the Desneys, which was forwarded by Moore to the company. It described the land and the Desneys therein agreed to furnish an abstract of title and a sworn appraisement of the land and pay all expenses. The loan was made on said application. Moore was agent of the Desneys, and bound to do the best he could for them. Legally he could not well be the agent of both parties, and we do not think he was. He owed no duty to the plaintiff or said company and was in no way responsible to either. What he did or said could not be binding on the plaintiff, and therefore the latter and said company would not be bound by the knowledge of Moore. *Wyllis v. Ault*, 46 Iowa, 46; *Smith v. Wolf et al.*, 55 Iowa 555; *Dickey v. Brown et al.*, 56 Iowa, 426.

II. The next question is did the plaintiff have constructive notice of the judgment. The confession upon which it was 2. CONSTRUCT- rendered is entitled, "*C. Aultman & Co. v. Dan-* IVE notice : misnomer. *iel Desney and Helen Desney*," and was sworn to by them. The judgment was rendered against "Daniel Desney and Ellen Desney," and was so indexed in the judgment docket. The defendant insists that "Helen" and "Ellen" are the same. The rule is said to be: "If two names are taken promiscuously to be *the same name in common use*, though they differ in sound, there is no variance. When two names are *derived from the same source*, or when one is an abbreviation or corruption of the other, but both are taken by common use to be the same, though differing in sound, the use of one for the other is not a misnomer." *Trimble v. The State*, 4 Blackford, 437; 5 Bacon's Abr., "Misnomer"; 7 American

Common Law, 51, are cited in support of the foregoing proposition. Its correctness will be conceded.

The first proposition is if the names are commonly used as the same, though they differ in sound, if either is used it is not a misnomer, as Elizabeth, Bettie and Bessie, or Sarah, Sara and Sally. This may be admitted but Helen and Ellen have not been commonly used as the same. There is no evidence so tending, and Mrs. Desney was not known by the name of Ellen, nor did she at any time so write her name. We think the names have been known and generally recognized as different and distinct.

The last proposition is where one is an abbreviation or corruption of the other, but both are taken by common use to be the same, though differing in sound, the use of either is not a misnomer. But "Helen" is not in our opinion an abbreviation or corruption of "Ellen;" nor is the latter an abbreviation of the former, nor are they commonly or indiscriminately used as the same, to our knowledge, and certainly the evidence does not so show. The second proposition is if the names are derived from the same source the use of one for the other is not a misnomer, and it is insisted that this is so as to the names in question. The argument being that "Helen" and "Ellen" are "both derived from the Greek and the difference in spelling in English doubtless results from the difference between the two Greek letters *epsilon* and *eta*. Ellena, if the Greek letter *eta* was used in commencing the word would be pronounced Hellena, the letter *eta* embracing the asperate H when pronounced. Thus the Greeks are denominated among the classics Ellenes or Hellenes indifferently, both meaning the same thing." Donnegan's Greek Lexicon, 473, and Websters Unabridged Dictionary, title, names of women, such as Eleanor and Elenor are cited. It seems to us the logical result of the argument is that in order to be an accurate, reliable and safe abstractor a person must be versed in the Greek language and not only so but in all other languages from which names now used in

this country may have been derived. There is no statute requiring a person to employ an abstractor, therefore every person must be so versed before he can safely purchase real estate. We cannot think this is the meaning of the rule, but at most it should be held to mean if both names are derived from the same source as defined and understood in the English language, then the use of one for the other should not be regarded as a misnomer. We, therefore, hold the plaintiff was not chargeable with constructive notice of said judgment because it was indexed as being against Ellen Desney instead of Helen Desney.

But counsel say if the index did not impart notice, the record, if examined, would have done so, and therefore the plaintiff had constructive notice of the judgment, and *Huston v. Seeley*, 27 Iowa, 183, is cited in support of this proposition. In that case the true name was Almira S. Stringham and the deed of trust was so indexed, and it was held the party was charged with notice of what the index contained, and this being so he was bound to look further and was therefore bound by what appeared of record. To the same effect is *The State v. Shaw*, 28 Iowa, 67. The rule may be that when a person is charged with constructive notice of the index he is also chargeable with notice of what appears of record. But we have no such case before us and we deem it clear if a party is not charged with constructive notice by what appears in the index book he is not bound to look further, and therefore is not bound by what appears of record.

3. ——— : index.

It is said the plaintiff did not examine the index book and therefore was not in fact mislead. This is immaterial. He was bound by whatever appeared in said book whether he examined it or not. He was not bound to examine it and in such case is only chargeable with notice of what it contains.

The court held the judgment to be valid and a lien on the premises junior to the mortgage. As between the parties to this appeal this was correct and the judgment will be

AFFIRMED.